IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CV-20056-KING

GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK,

      Plaintiff/Counter-Defendant,

vs.

THE TOWERS OF QUAYSIDE NO. 4
CONDOMINIUM ASSOCIATION,

      Defendant/Counter-Plaintiff.
_____/

## ORDER GRANTING IN PART PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon Plaintiff/Counter-Defendant GREAT AMERICAN INSURANCE COMPANY OF NEW YORK's (hereinafter "Plaintiff" or "Great American") Motion for Summary Judgment and Incorporated Memorandum of Law in Support Thereof (the "Motion") (DE 20), filed May 20, 2015.[1]

## BACKGROUND[2]

Great American issued Quayside a property insurance policy for the period of February 2, 2013 to February 2, 2014. The policy provided first-party property insurance coverage for the premises located at 4000 Towerside Terrace, Miami, Florida 33038,

---

[1] The Court has additionally considered Defendant/Counter-Plaintiff THE TOWERS OF QUAYSIDE NO. 4 CONDOMINIUM ASSOCIATION's (hereinafter "Defendant" or "Quayside") Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and Incorporated Statement of Material Facts (DE 25), filed June 29, 2015, and Plaintiff's Reply in Support of its Motion for Summary Judgment (DE 28), filed July 17, 2015.

[2] The following facts are undisputed.

1

which includes a condominium building that is the subject of this action.[3] On February 11, 2013, a release of water from a broken valve on an air conditioning unit in the building caused water damage to the drywall, carpeting, baseboards, insulation, and wallpaper in the east hallways of the eleventh floor and the floors below. Floors three through twenty-five of the building have a uniform appearance by design with respect to the carpet, wallpaper, and woodwork in the common area hallways. The carpeted east hallways of the building are separated from the carpeted west hallways by a tiled elevator landing on each floor.[4]

Quayside submitted a claim to Great American for loss and/or damage to the building arising from the release of water, including, *inter alia*, loss and/or damage to drywall, carpeting, baseboards, insulation, and wallpaper of the east hallways of the eleventh floor and floors below. Great American paid Quayside a total of $170,291.84 for the damage to the east hallways of the eleventh floor and the floors below. Quayside asserts that this amount does not fully compensate it for the direct physical loss caused by the water damage.

Additionally, Quayside sought coverage to repair or replace undamaged carpeting, wallpaper, baseboards, and woodwork in 1) the west hallways and elevator landings of the eleventh floor and floors below and 2) floors twelve through twenty-five. Quayside contends it is entitled to repair or replacement of these undamaged components because

---

[3] The building is twenty-five stories.
[4] Based upon the parties' respective statements of facts, it is unclear as to whether the baseboards, woodwork, and wallpaper of the east and west hallways are similarly separated by the elevator landing on each floor or whether the baseboards, woodwork, and wallpaper are continuous runs across each floor.

1) it will otherwise not be possible to achieve aesthetic uniformity between the new carpeting, wallpaper, baseboards, and woodwork installed in the area that suffered water damage and the rest of the building and 2) the loss of aesthetic uniformity devalues the building and constitutes a loss to the building. Great American disputes this position, and informed Quayside that no coverage is available for repair or replacement of building components that were not physically damaged.

The policy's Difference in Conditions ("DIC") Coverage Form provides, *inter alia*, "We will pay for your 'loss' to Covered Property from a Covered Cause of Loss." The DIC Declarations form provides, *inter alia*, "DIC Direct Physical 'Loss' The most we will pay for direct physical 'loss' from a Covered Cause of Loss . . . is . . . [the limits of insurance set forth in the policy.]" As amended by an endorsement, the policy defines "Covered Cause of Loss" as "direct physical 'loss' to Covered Property, except those causes of 'loss' listed in the exclusions." Through its Specified Cause of Loss Form, the policy specifically excludes coverage for consequential loss, which it defines as "Delay, loss of use, loss of market, or any other consequential loss."

Through the instant motion, Great American seeks summary judgment on Count I of its Complaint, which requests the entry of a "declar[ation] that Great American has no obligation under the [p]olicy to provide coverage for repair or replacement of building components that did not sustain direct physical loss or damage . . . ."

## LEGAL STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

3

of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials; or showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1). "In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine material fact and that it is entitled to judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Further, the existence of a "scintilla" of evidence in support of the non-movant's position is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, a court need not permit a case to go to a jury when the inferences that are drawn from the evidence, and upon which the non-movant relies, are "implausible." *Matsushita*, 475 U.S. at 592-94; *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743

(11th Cir. 1996).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* The Court must also determine whether the dispute about a material fact is indeed genuine, that is, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see, e.g., Marine Coatings of Ala., Inc. v. United States*, 932 F.2d 1370, 1375 (11th Cir. 1991).

## DISCUSSION

Great American moves for summary judgment on its claim for a declaration that the policy does not entitle Quayside to coverage for replacement of undamaged building components to assure aesthetic uniformity between damaged building components that must be replaced and the undamaged building components. In support of its motion, Great American relies on the policy's limitation of coverage to "direct physical loss" and explicit exclusion of coverage for consequential loss. For its part, Quayside argues that the measure of recovery under the policy must be determined from the perspective of damage to the building as a whole, that the building as a whole suffered direct physical damage from water, and that the policy covers all costs necessary to restore the building to its pre-loss, aesthetically uniform condition.

5

Quayside's interpretation notwithstanding, the policy plainly only provides coverage for "direct physical loss," specifically excludes coverage for consequential loss, and makes no mention of "matching" or "aesthetic uniformity" at all. While the Court finds that coverage for matching, for the purpose of achieving aesthetic uniformity, is appropriate where repairs concern "any continuous run of an item or adjoining area" for materials such as wallpaper, baseboards, woodwork, and carpeting, it is plain that matching is not otherwise required under the policy. *See Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*, No. 11-60447, 2011 WL 6754063, at *12 n.4 (S.D. Fla. Dec. 22, 2011) (Scola, J.). To hold otherwise would do violence to either the parties' mutual duties of good faith or the plain terms of the policy.

Accordingly, the Court finds Great American is entitled to a declaration that it has no obligation to provide coverage to replace: 1) undamaged components on floors twelve through twenty-five or 2) undamaged carpeting in the west hallways of floors three through eleven.[5] However, as it is unclear whether the wallpaper, baseboards, and woodwork on floors three through eleven form a continuous run from one end of the building to the other, or whether these components are separated from each other in the same manner the carpeting in the east and west hallways is separated by the central elevator lobby on each floor, Great American has failed to establish it is entitled to summary judgment with respect to whether it must provide "matching" coverage for these components.

---

[5] With respect to the carpeting, the undisputed record establishes that the carpeting does not form a continuous run from one end of the building to the other.

6

## CONCLUSION

Therefore, it is **ORDERED**, **ADJUDGED**, and **DECREED** that Plaintiff/Counter-Defendant GREAT AMERICAN INSURANCE COMPANY OF NEW YORK's Motion for Summary Judgment **(DE 20)** be, and the same is, hereby **GRANTED IN PART**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, in Miami, Miami-Dade County, Florida, this 4th day of November, 2015.

```
                              JAMES LAWRENCE KING
                              UNITED STATES DISTRICT JUDGE
```

**Cc:** All counsel of record